**IT IS ORDERED as set forth below:**



**Date: February 7, 2025**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| IN RE: | |
| | CASE NUMBER |
| **RANDALL E. KIMBALL,** | **24-11036-PMB** |
| Debtor. | CHAPTER 7 |
| | |
| **TCABA CARROLLTON, LLC,** | |
| Movant, | |
| v. | CONTESTED MATTER |
| **RANDALL E. KIMBALL,** | |
| Respondent. | |

## ORDER GRANTING MOTION FOR COMFORT ORDER

On August 16, 2024, the above-named movant (the "Movant") filed an *Expedited Motion for Comfort Order* (Docket No. 15)(the "Motion"). In the Motion, the Movant seeks to have this Court determine that certain real property located at 204 Stewart Street, Carrollton, Carrol County, Georgia (the "Property") was not property of this bankruptcy estate under 11 U.S.C. § 541(a) on

the date this case was filed and thus that an August 6, 2024, nonjudicial foreclosure sale of that property (the "Foreclosure Sale") conducted by Coastal States Bank (the "Lender") was not stayed by the automatic stay of 11 U.S.C. § 362(a).  In response to the Motion, on August 26, 2024, the above-named debtor/respondent (the "Debtor") filed *Debtor's Response to TCABA Carrollton, LLC's Expedited Motion for a Comfort Order* (Docket No. 21)(the "Debtor's Response").  In the Debtor's Response, the Debtor maintains that the Motion should be denied because the Property was property of his bankruptcy estate at the time of the Foreclosure Sale and was thus protected by the automatic stay.

**Background**

At all relevant times, title to the Property was in the name of Stewart Street Academy & Childcare, LLC, a Georgia limited liability company (the "LLC"), in the real property records of Carroll County, Georgia, where the Property is located.  The membership interests in the LLC were at all relevant times owned one hundred percent (100%) by the Debtor.  From September 1, 2020, to November 30, 2022, the LLC was a Chapter 11 debtor before this Court in Case No. 20-11216 (the "LLC Case").  A plan was confirmed in the LLC Case and the LLC Case was subsequently closed.

The Georgia Secretary of State "administratively dissolved" the LLC on October 28, 2022, pursuant to O.C.G.A. § 14-11-603(b)(2), and the LLC remains administratively dissolved.  There is no evidence in the record that any actions were taken since the administrative dissolution to wind up the LLC as permitted by O.C.G.A. § 14-11-603(b)(3) or to transfer any of its assets to the Debtor as its sole owner.  For example, there is no evidence that the LLC filed a statement of commencement of winding up with the Secretary of State pursuant to O.C.G.A. § 14-11-606, nor

was there any evidence presented that any of actions to address claims against the LLC as permitted by O.C.G.A. §§ 14-11-607, 608 were taken or that a certificate of termination was filed with the Secretary of State pursuant to O.C.G.A. § 14-11-610. Instead, as outlined below, it appears the Debtor continued to operate the LLC in violation of the limitations contained in O.C.G.A. § 14-11-603(b)(3).

Beginning in 2023, the Lender asserts that the LLC failed to make required payments to the Lender timely on its debt to the Lender. On or about May 24, 2024, notwithstanding the administrative dissolution of the LLC and the issues it was having with the Lender, the Debtor signed a "Commercial Real Estate Lease Agreement with Option to Purchase" with the Movant on behalf of the LLC regarding the Property (the "Lease"). Pursuant to the Lease, the LLC leased the Property to the Movant for three (3) years, commencing on June 1, 2024. Additionally, the Lease contains an option to buy the Property for $1.45 million, with a discounted price of $1.4 million available if the Property is purchased in the first two (2) years of the Lease. In connection with the execution of the Lease, the Movant paid the LLC $275,000.[1]

The Debtor initiated this case by filing a voluntary petition (Docket No. 1) under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on August 5, 2024 (the "Filing Date"). The Property and the Debtor's interest in the LLC are both listed in the Debtor's initial

---

[1] The Debtor never disclosed the issues he was having with the Lender to the Movant in connection with their negotiation and execution of the Lease. Instead, a letter was presented to the Movant on behalf of the LLC purporting to show that the loan with the Lender was in good standing. That letter was a forgery. The Debtor denied sending the letter or causing it to be created, but it was sent from his cell phone via text message. The Debtor also never disclosed to the Lender prior to the Foreclosure Sale that he had leased the Property to the Movant, or that the LLC had received $275,000.

3

Schedules, *see* Docket No. 1.[2] On August 6, 2024, the Lender conducted the Foreclosure Sale, at which the Lender was the successful bidder.[3] On August 16, 2024, the Movant filed the Motion. On August 20, 2024, the Movant also filed a *Motion to Convert to Chapter 7* (Docket No. 18)(the "Motion to Convert"), asserting the Chapter 13 case was filed in bad faith and should be converted to Chapter 7 for cause. The Court set the Motion and the Motion to Convert for an evidentiary hearing on October 1, 2024 (the "Hearing").

Prior to the Hearing, the Movant filed its *Brief in Support of Motion for Comfort Order* (Docket No. 30)("Movant's Brief"), the Debtor filed *Debtor's Pre-Hearing Brief Regarding TCABA Carrollton, LLC's Motion to Convert Case to Chapter 7, and Expedited Motion for Comfort Order* (Docket No. 34)("Debtor's Brief"), and Lender filed the *Pre-Hearing Brief of Coastal States Bank* (Docket No. 36)("Lender's Brief"). Judge Lisa Ritchey Craig heard over five (5) hours of testimony regarding these matters at the Hearing. The matters were continued to October 3, 2024, for closing arguments, at which point the Hearing concluded. Between the end of the Hearing and the announcement by Judge Ritchey Craig of her decision, the Debtor filed motions to sell the Property and to employ a broker for that purpose.[4] The Motion to Convert was ultimately granted by the Court's *Order* (Docket No. 42), in which Judge Ritchey Craig converted

---

[2] The Debtor neither listed the bank account that was in the name of the LLC in his schedules, nor disclosed the LLC's receipt of $275,000 in his statement of financial affairs. The Debtor testified at the Hearing that these omissions were inadvertent.

[3] The Lender initially delayed in recording the deed under power of sale. By the time of the Status Conference (defined below), however, the deed under power had been recorded in the real property records of Carroll County, Georgia.

[4] These motions were withdrawn once the case was converted. *See* Docket No. 60.

4

this case to Chapter 7 for cause but deferred ruling on the Motion. Because the case was converted to Chapter 7, it was reassigned to Judge Paul M. Baisier.[5]

This matter was then set for a status conference, to be held on January 15, 2025 (the "Status Conference"), after the meeting of creditors under Section 341 of the Bankruptcy Code was held in the Chapter 7 case. After the 341 meeting but before the Status Conference, James G. Baker, the duly appointed Chapter 7 trustee, filed his *Response to Motion for Comfort Order* (Docket No. 65)(the "Trustee's Response"), indicating he had no opposition to the Motion. At the Status Conference, counsel appeared for the Debtor, the Lender, and the Movant. The Chapter 7 trustee also appeared. After making remarks and answering questions from the Court, all the parties that appeared indicated no further evidence was needed, and the matter was ripe for decision.

## Issue

The question posed by this case is easy to state. Does the sole owner of an administratively dissolved Georgia limited liability company have an interest in real property that was at all times titled in the name of the limited liability company that is sufficient to render the real property "property of the estate" under Section 541 of the Bankruptcy Code such that the property cannot be foreclosed upon after the owner files for bankruptcy without violating the automatic stay of Section 362(a) of the Bankruptcy Code? The answer, although requiring a bit of explanation, is similarly easy to state. No, he does not.

---

[5] In the Newnan Division of the Bankruptcy Court for the Northern District of Georgia, Judge Ritchey Craig handles Chapter 12 and 13 cases, and Judge Baisier handles Chapter 7 and 11 cases.

5

**Analysis**

The automatic stay of Section 362(a) of the Bankruptcy Code protects property of the estate from creditor actions postpetition. In the Eleventh Circuit, transactions in violation of the automatic stay are void and without effect. *See In re Albany Partners*, *Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). "Property of the estate" is defined in Section 541(a) of the Bankruptcy Code. Per Section 541(a)(1), with certain exceptions inapplicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case" are included in property of the estate. That definition is broadly construed. *United States v, Whiting Pools, Inc.*, 462 U.S. 198, 205-06 (1983). Although property of the estate is defined by federal law, state law determines the nature and extent of a debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 54-55 (1979). The Debtor asserts that under Georgia law, because the LLC was administratively dissolved, it no longer exists, and he holds a "legal and/or equitable interest" in the Property. He is wrong on both counts.

First, O.C.G.A § 14-11-603(b)(3) expressly provides that "[a] limited liability company administratively dissolved continues its existence . . . ," while the remainder of O.C.G.A § 14-11-603 makes clear the "administrative dissolution" is a temporary state that is intended to be resolved by the dissolved entity curing the matters that led to its dissolution.[6] This is apparent because the limited liability company is given <u>five (5) years</u> to seek "reinstatement," O.C.G.A § 14-11-603(b)(4), and during that lengthy period its exclusive right to use its name is maintained notwithstanding its purported "dissolution." O.C.G.A § 14-11-603(b)(6). It is further apparent

---

[6] These include the submission of an annual registration of the limited liability company, the payment of registration fees and/or the maintenance of an appropriate registered agent. O.C.G.A § 14-11-603(b)(1).

6

because, in cases where reinstatement occurs, the limited liability company is treated "as if the administrative dissolution has never occurred." O.C.G.A. § 14-11-603(b)(4). Based on the foregoing, it is simply incorrect to say that the LLC "no longer exists," such that it could no longer be the owner of the Property.

As for the idea that the Debtor has a "legal or equitable interest in the Property" as a result of the administrative dissolution, it is first important to note that the Debtor has no actual legal ownership interest in the Property. The property is instead titled one hundred percent (100%) in the name of the LLC. Further, the Debtor's ownership interest in the LLC does not provide him with such an interest. O.C.G.A. § 14-11-501(a) clearly states that "[a] member has no interest in specific limited liability property." The Debtor's assertion is that, notwithstanding the foregoing, because he has the right to wind down the administratively dissolved LLC and ultimately transfer the Property to himself, he has a "legal or equitable interest" in the Property sufficient to convert the Property into property of the estate.

In that regard, it is instructive to look at the rights that the Debtor had upon the "administrative dissolution" of the Property, as well as the rights the Debtor had at all times as the sole owner of the LLC. As noted above, upon the administrative dissolution of the LLC, the LLC "may not carry on any business except that necessary to wind up and liquidate its business and affairs." Thus, the administrative dissolution does not create new rights in the Debtor as the owner of the LLC. Instead, it restricts his existing rights. It prohibits him from conducting any business in the LLC other than winding it up. Prior to administrative dissolution, the Debtor had the right to operate the business of the LLC. *See, e.g.*, O.C.G.A § 14-11-301. Those rights were temporarily lost. Further, the Debtor, as the sole owner of the LLC, already had the right at any

7

time to dissolve the LLC and wind it up. Those are not new rights created by administrative dissolution. *See* O.C.G.A §§ 14-11-602(b)(3), 604. Consequently, it is hard to see how the "administrative dissolution" of the LLC had any impact on whether the Property is property of the estate. And absent the administrative dissolution, this Court and others have held that property owned by a limited liability company is not property of the estate of its owner. *See, e.g.*, *Williams v. PRK Funding Servs., Inc.,* 596 B.R. 375, 380 (W.D.Wash. 2019), *aff'd* 817 F. App'x 524 (9th Cir. 2020); *In re Penn*, No. 09-14624-WHD, 2010 WL 9445533, at *2-3 (Bankr. N.D. Ga. Apr. 2, 2010); *In re Stadler*, No. BKR. 04-91944, 2005 WL 6487189, at *1 (Bankr. N.D. Ga. Mar. 31, 2005).[7]

In addition, a review of the dissolution and wind up process under Georgia law makes clear that having the right to dissolve and wind up a limited liability company does not give the Debtor an interest in any particular property of the LLC, and that even if it did, no such rights have arisen here. More particularly, as noted previously, a single member can dissolve a limited liability company at any time. O.C.G.A. § 14-11-604 permits, but does not require, such a single member to wind up a limited liability company that has been dissolved, so long as the windup is not inconsistent with the articles of organization or the operating agreement.

O.C.G.A § 14-11-605 requires the limited liability company, in connection with a winding up, to both pay its liabilities and distribute its remaining assets. No evidence was provided here that any winding up of the LLC ever commenced.[8] In fact, the evidence is

---

[7] The Debtor also admits this in his pleadings. *See* Debtor's Brief, p. 20 ("The Movant's argument would be correct if the LLC was still an existing legal entity . . . .").

[8] In addition, at the Status Conference, the Debtor's counsel acknowledged that not only was the Property in the name of the LLC, but that no actions had been taken to wind up the LLC.

entirely to the contrary. Instead of winding up the LLC, the Debtor continued to operate it. In particular, throughout 2023 and into mid-2024, the LLC continued to make loan payments to the Lender, and as late as mid-2024, almost two (2) years after the LLC was administratively dissolved, the Debtor entered into a three (3) year lease of the Property with Movant (the Lease) on behalf of the LLC. No evidence was presented that the Debtor took any action during the almost two (2) years he claims that the LLC did not exist to transfer record title to the Property to himself, which would have required the execution of a deed by the LLC in his favor and the recordation of that deed in the real property records. None of that was done. Instead, the Debtor continued to treat the LLC as if it existed and owned the Property.[9]

The Debtor cites several cases in the Debtor's Brief, none of which are helpful to him. First, he cites to *In re Nalley*, 507 B.R. 411 (Bankr. S.D. Ga. 2014), a case about inheritance rights. In *Nalley*, the joint debtors were the sole heirs of the estate of their deceased daughter. *Id.* at 414. The daughter's probate estate contained, among other things, an annuity. *Id.* The *Nalley* court stated that "whatever rights the Nalley's have in or to the annuity" was property of the estate. *Id.* The court did not say that the annuity itself was property of the estate—it said that whatever rights they had in the annuity, presumably as heirs of the estate, were property of the estate. *See id.* at

---

[9] As late as July 17, 2024, the Debtor hired an attorney (Daniel Greenfield) to communicate with counsel for the Lender regarding the then threatened foreclosure of the Property. In his letter of that date, the attorney indicates he had been engaged by "Randall Kimball of Stewart Street Academy & Childcare, LLC." The reference line in the letter refers to "Coastal States Bank v. Stewart Street Academy & Childcare, LLC," and the Debtor is copied as "Mr. Randall Kimball, Stewart Street Academy & Childcare."

417-18.[10]  In addition, of course, this case is not about a probate estate.  Consequently, this case is not helpful to the Debtor.

The Debtor also cites *In re Thadikamalla*, 481 B.R. 232 (Bankr. N.D. Ga. 2012), a case dealing with a partnership and its property.[11]  In *Thadikmalla*, the debtor was a partner in a family-limited partnership that owned five (5) beach condominiums. *Id.* The partnership originally had four partners—the debtor (10%), her husband (60%), and their two children (30%). *Id.* at 235. The debtor's husband, the general partner, died seven (7) years prepetition. *Id.* Under applicable Georgia limited partnership law, the limited partnership dissolved on his death and was to be wound up. *Id.* "However, dissolution does not equate to termination of the [p]artnership.  A [partnership] continues to exist after dissolution until there is cancellation of the certificate." *Id.* at 238.  Thus, the partnership, like the LLC in this case, continued on, and continued to own the beach condos. *Id.*  Per the husband's will, the 60% owned by him passed to his wife, the debtor. *Id.*  The *Thadikmalla* court goes on to make the unsurprising finding that the debtor's interest in the partnership is property of the bankruptcy estate. *Id.* at 240. To be helpful to the Debtor here, however, the court in *Thadikamalla* would have had to find that the beach condos owned by the partnership were property of the estate, which it did not.  In fact, it said exactly the opposite.

---

[10] The issue of whether the annuity itself was property of the estate was not presented in *Nalley*, such that any statement about that would be *dicta* in any event.  Instead, it was sufficient that the rights of the debtors in the probate estate were property of the estate, as the case dealt with whether the debtors' effort to transfer those rights to the debtor wife, who was not subject to a nondischargeable judgment, violated the automatic stay (it did).  Since this case does not involve an inheritance, whether the specific assets of a probate estate are protected by the automatic stay of a debtor-heir is not directly relevant here.  However, to the extent they may be, that may result from state law that is not applicable to the facts of this case.  *See, e.g.*, *In re Holyfield*, No. 16-67309, 2019 WL 2387045, at *3 (Bankr. N.D. Ga. June 3, 2019)(relying on O.C.G.A. § 53-2-7).

[11] The Debtor also cites to an unreported case from this Court, which purportedly stands for the unremarkable proposition that a personal injury claim indisputably owned by the debtor is property of the estate even if it has not been liquidated.  No explanation is provided as to how that is similar to this case or in any other way relevant.

More particularly, in connection with the Chapter 7 trustee's request to partition the real property, the *Thadikamalla* court stated:

> Trustee's legal theory conflates the estate's interest in the [p]artnership with the estate's purported interest in the [b]each [c]ondos owned by the [p]artnership. Partition is not an available tool to Trustee because the estate's interest is not in the [b]each [c]ondos. The estate holds a 70% interest in the [p]artnership that owns the [b]each [c]ondos. Trustee argues that since [d]efendants did not take the steps to wind up the [p]artnership, then he should be entitled to liquidate the [b]each [c]ondos. Trustee's ability to liquidate the [p]artnership assets does not originate with remedies under § 363(h). Instead, Trustee succeeds to Debtor's state law rights to wind up the [p]artnership. Without winding up the [p]artnership, partition is premature.

*In re Thadikamalla*, 481 B.R. at 240 (emphasis added).   This case is thus a clear refutation of the Debtor's theory rather than support for it.

The Debtor's arguments are also refuted by certain authority from other jurisdictions. *See, e.g.*, *Dombrowski v. Legacy Mountain Homeowners Ass'n, Inc.*, No. 5:23-CV-899-AMM, 2024 WL 3756148, at *3 (N.D. Ala. Mar. 13, 2024), *reh'g denied*, No. 5:23-CV-899-AMM, 2024 WL 3756147 (N.D. Ala. July 29, 2024)(creditor of administratively dissolved limited liability company did not violate automatic stay by collecting homeowners' association dues from the limited liability company where limited liability company had not been wound down and no certificate of termination had been filed); *In re Hart*, 530 B.R. 293, 296 (Bankr. E.D. Pa. 2015)(denying a motion for contempt by debtor who was the sole owner of a limited liability company because upon dissolution member hold no legal or equitable rights in the specific assets of the limited liability company); *In re Kane*, No. 10-18898-JNF, 2011 WL 2119015, at *3 (Bankr. D. Mass. May 23, 2011)(debtors who were sole members of administratively dissolved limited liability company that had not been wound up could not exempt real property titled in the name of the limited liability company).

11

In light of the foregoing, and after review of the Motion, the Debtor's Response, the Debtor's Brief, the Movant's Brief, the Lender's Brief, the Trustee's Response, the testimony and argument at the Hearing, the argument and statements at the Status Conference, and the docket and record in this matter, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Motion is **GRANTED**.  And it is further

**ORDERED, ADJUDGED AND DECREED** that none of the assets of the LLC, including the Property, were as of the Filing Date property of the Debtor's bankruptcy estate, and thus the Foreclosure Sale was not stayed by the automatic stay of Section 362(a) of the Bankruptcy Code.

The Clerk is directed to serve a copy of this Order upon the Respondent, counsel for the Respondent, the Debtor, counsel for the Debtor, the Trustee, and all parties served with the Motion.

**[END OF DOCUMENT]**